**UNITED STATES DISTRICT COURT**
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **CHAMBERS OF**<br>**CHRISTINE P. O'HEARN**<br>UNITED STATES DISTRICT JUDGE | MITCHELL H. COHEN BUILDING &<br>U.S. COURTHOUSE<br>4TH & COOPER STREETS<br>ROOM 6050<br>CAMDEN, NJ 08101<br>856-757-5167 |

October 11, 2023

<u>VIA CM/ECF</u>
Frank Anthony Reino
FISHER ZUCKER LLC
21 South 21st Street
Philadelphia, PA 19103

**LETTER ORDER**

  Re: <u>Mister Softee, Inc., et al. v. Omar</u>
     <u>Civil Action No. 23-3845</u>

Dear Counsel:

  This matter comes before the Court on a motion for default judgment pursuant to Federal Rule of Civil Procedure 55(b)(2), a permanent injunction pursuant to Federal Rule of Civil Procedure 65, and attorney's fees pursuant to the franchise agreements and the Lanham Act, 15 U.S.C. § 1117, by Plaintiffs Mister Softee, Inc. and Mister Softee Franchise, LLC (collectively, "Plaintiffs") against Defendant Jawdat Omar ("Defendant"). (ECF No. 8). The Court did not hear oral argument pursuant to Local Rule 78.1. For the reasons that follow, Plaintiffs' Motion is **GRANTED** in part and **DENIED** in part.

  I. <u>**BACKGROUND AND PROCEDURAL HISTORY**</u>

  Between October 2015 and June 2021, Defendant entered into three franchise agreements with Plaintiffs whereby Defendant was granted a license to operate ice cream trucks in various neighborhoods of Philadelphia, Pennsylvania branded with Plaintiffs' trade names, service marks, and trademarks. (Compl., ECF No. 1 at ¶¶ 8, 16–18). Each franchise agreement has a term of ten years. (ECF No. 1 at ¶ 20). Under two of the agreements, Defendant was required to pay Plaintiffs a minimum royalty of $3,500 per year; under the third agreement, the minimum royalty was $3,675 per year. (ECF No. 1 at ¶ 21). The franchise agreements also contained a noncompete clause that prohibits franchisees from being involved with "the sale of ice cream or other frozen confections" in any franchisee's territory for a period of two years following termination of an agreement. (ECF No. 1 at ¶ 24).

  In 2022, Defendant was found to be operating outside of his territories, which is prohibited under the franchise agreements. (Compl., ECF No. 1 at ¶¶ 19, 22). Defendant admitted as much and executed a "Territory Letter" with Plaintiffs on October 24, 2022, which modified the

franchise agreements to allow Plaintiffs to immediately terminate Defendant's franchise agreements if he continued to operate outside of his territories. (ECF No. 1 at ¶ 19, Ex. D). Thereafter, on June 3, 2023, Plaintiffs learned that Defendant was operating an ice cream truck in New Jersey. (ECF No. 1 at ¶ 25). Plaintiffs notified Defendant in writing on July 5, 2023, that his franchise agreements were terminated. (ECF No. 1 at ¶ 26). Nevertheless, Defendant has continued to operate his ice cream trucks, including in the territory of other franchisees, and has continued to display Plaintiffs' trademarks despite Plaintiffs' demands that the trucks be de-identified. (ECF No. 1 at ¶¶ 27–28).

On July 19, 2023, Plaintiffs filed a Complaint alleging Trademark Infringement and Unfair Competition (Count I), Breach of Contract as to the Post-Termination Non-Compete Clause (Count II), and Breach of Contract as to Future Royalties (Count Three). (ECF No. 1 at ¶¶ 30–50). Plaintiffs requested an entry of default on September 13, 2023, for Defendant's failure to plead or otherwise defend. (ECF No. 6). That same day, the Clerk of the Court entered default. On September 21, 2023, Plaintiffs filed the present Motion for Default Judgment seeking judgment in the amount of $43,245 plus attorney's fees and costs, and a permanent injunction. (ECF No. 8).

## II.  LEGAL STANDARDS

### a. Default Judgment

Pursuant to Federal Rule of Civil Procedure 55(a), a plaintiff may request an entry of default by the clerk of court as to "a party against whom a judgment for affirmative relief is sought [who] has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise[.]" FED. R. CIV. P. 55(a). Once a default has been entered, the plaintiff may then seek the entry of a default *judgment*—either by the clerk or the court itself—under Rule 55(b). FED. R. CIV. P. 55(b).

A party is not entitled to a default judgment as of right; "the entry of such a judgment is left primarily to the discretion of the district court." *DirecTV, Inc. v. Asher*, No. 03-01969, 2006 WL 680533, at *1 (D.N.J. Mar. 14, 2006) (citing *Hritz v. Woma*, 732 F.2d 1178, 1180 (3d Cir. 1984)). Because default judgments prevent the resolution of claims on their merits, courts generally "do[ ] not favor entry of defaults and default judgments.'" *United States v. Thompson*, No. 16-00857, 2017 WL 3634096, at *1 (D.N.J. July 20, 2017) (quoting *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 194 (3d Cir. 1984)). When considering a motion for default judgment, "[a] defendant is deemed to have admitted the factual allegations of the Complaint . . . except those factual allegations related to the amount of damages." *DirecTV*, 2006 WL 680533, at *1 (citing 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Fed. Prac. & Proc. § 2688, at 58–59 (3d ed. 1998)). In contrast, "the Court need not accept the moving party's legal conclusions, because even after default it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." *Id.* (citing Wright, Miller & Kane, *supra*, § 2688, at 63).

Through this lens, the court must: "1) determine it has jurisdiction both over the subject matter and parties; 2) determine whether defendants have been properly served; 3) analyze the

Complaint to determine whether it sufficiently pleads a cause of action; and 4) determine whether the plaintiff has proved damages." *Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d 532, 535-36 (D.N.J. 2008).

Additionally, the Court must consider the following three factors: "(1) whether the party subject to default has a meritorious defense, (2) the prejudice suffered by the party seeking default, and (3) the culpability of the party subject to default." *Doug Brady, Inc. v. N.J. Bldg. Laborers Statewide Funds*, 250 F.R.D. 171, 177 (D.N.J. 2008) (citing *Emcasco Ins. Co. v. Sambrick*, 834 F.2d 71, 74 (3d Cir. 1987)). If these factors weigh in a plaintiff's favor, the court may grant default judgment.

### b. Permanent Injunction

In determining whether to grant a permanent injunction, courts consider whether: "(1) the moving party has shown actual success on the merits; (2) the moving party will be irreparably injured by the denial of injunctive relief; (3) the granting of the permanent injunction will not result in even greater harm to the defendant; and (4) the injunction would be in the public interest." *Shields v. Zuccarini*, 254 F.3d 476, 482 (3d Cir. 2001).

## III. ENTRY OF DEFAULT JUDGMENT

### A. Jurisdiction and Service

This Court has jurisdiction under 28 U.S.C. § 1331 because this case raises a federal question under the Lanham Act, 15 U.S.C. § 1125. And the Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367. Additionally, the Court finds that Defendant was properly served on August 22, 2023. (ECF No. 5). Thus, the Court has jurisdiction over the matter and the parties.

### B. Liability and Appropriateness of Default Judgment

Here, Plaintiffs raise three claims: trademark infringement and unfair competition under the Lanham Act, 15 U.S.C. § 1125(c) (Count One); (2) breach of contract of the post-termination non-compete agreement (Count Two); and (3) breach of contract of future royalties (Count Three). (Compl., ECF No. 1).

Turning first to the appropriateness of an entry of default judgment, courts must consider the following three factors: "(1) whether the party subject to default has a meritorious defense, (2) the prejudice suffered by the party seeking default, and (3) the culpability of the party subject to default." *Doug Brady, Inc.*, 250 F.R.D. at 177 (citation omitted). Based on the allegations in the Complaint, Defendant does not appear to have a meritorious defense as Plaintiffs have provided evidence that Defendant continues to operate in his former territory. Second, Plaintiffs will suffer in the absence of the entry of default judgment as Defendant continues to operate under its trademark without a franchise agreement and in defiance of a valid noncompete agreement. Finally, Defendant has acted culpably in his actions prompting the filing of the Complaint and has

3

failed to appear in this litigation. The entry of default judgment in this case is appropriate.

1. TRADEMARK INFRINGEMENT (COUNT ONE)

As to liability, to prove a claim for trademark infringement, Plaintiffs must show that: "(1) the mark is valid and legally protectable; (2) the mark is owned by the plaintiff; and (3) the defendant's use of the mark to identify goods or services is likely to create confusion concerning the origin of the goods or services." *Fisons Horticulture, Inc. v. Vigoro Indus., Inc.*, 30 F.3d 466, 472 (3d Cir. 1994). Here, Plaintiffs maintain it has a trademark registered in accordance with the Lanham Act. (Compl., ECF No. 1, ¶¶ 9–11). If a trademark is federally registered and thus has become "incontestable," "validity, legal protectability, and ownership are proved." *Ford Motor Co. v. Summit Motor Prod., Inc.*, 930 F.2d 277, 291 (3d Cir. 1991).

Additionally, Plaintiffs contend that Defendant's unauthorized use of the trademark will likely create confusion. Here, Plaintiffs notified Defendant in writing on July 5, 2023, that his franchise agreements were terminated. (ECF No. 1 at ¶ 26). Nevertheless, Defendant continued to operate his ice cream trucks, including in the territory of other franchisees, and has continued to display Plaintiffs' trademarks despite Plaintiffs' demands that the trucks be de-identified. (ECF No. 1 at ¶¶ 27–28). As Plaintiffs note, courts have held that "there is a great likelihood of confusion when an infringer uses the exact trademark" as the plaintiff. *S & R Corp. v. Jiffy Lube Int'l, Inc.*, 968 F.2d 371, 375 (3d Cir. 1992). There is no question here that the parties are using the same legally protectable trademark, owned by Plaintiffs. As such, Defendant's use of the trademark will likely cause customer confusion about Defendant's affiliation with Plaintiffs. And there are no facts suggesting any meritorious defense. Defendant, thus, is liable on this Count.

2. BREACH OF CONTRACT (COUNTS TWO AND THREE)

"A non-compete is not valid if its only purpose is to restrict competition, but it may be valid to the extent it furthers some other legitimate goal of the employer." *HR Staffing Consultants, LLC v. Butts*, No. 15-3155, 2015 WL 3492609, at *8 (D.N.J. June 2, 2015), *aff'd*, 627 F. App'x 168 (3d Cir. 2015). A non-compete will be found reasonable if it "(1) protects the legitimate interests of the employer, (2) imposes no undue hardship on the employee, and (3) is not injurious to the public." *Id.* (citation omitted).

Here, the noncompete clause is reasonable. First, as Plaintiffs contend, "it protects a legitimate business interest in that it protects Plaintiffs' trade secrets, confidential information, and provides Mister Softee with an opportunity to locate a new franchisee to operate in the Defendant's former territory and to serve Mister Softee's customers there." (Pla. Br., ECF No. 8-1 at 11). Indeed, "New Jersey courts considering non-compete covenants 'recognize as legitimate the employer's interest in protecting trade secrets, confidential information, and customer relations.'" *HR Staffing Consultants, LLC*, 2015 WL 3492609, at *8 (quoting *Campbell Soup Co. v. Desatnick,* 58 F. Supp. 2d 477, 489 (D.N.J. 1999)). As such, Plaintiffs satisfy this element.

Additionally, the noncompete clause does not impose undue hardship on Defendant as it is narrow in both temporal and geographic scope. As stated in the Complaint, the noncompete only applies to Defendant's former territory and the territories of Mister Softee franchisees for just two years. (Compl., ECF No. 1, ¶¶ 16–24). After the two years, Defendant can compete with Mister Softee in any territory. (Pla. Br., ECF No. 8-1 at 11). Courts have upheld noncompete agreements with similar restrictions. *HR Staffing Consultants, LLC*, 2015 WL 3492609, at *8 (collecting cases); *see also Schuhalter v. Salerno,* 653 A.2d 596, 59 9 (N.J. Super. Ct. App. Div. 1995) (internal quotation and citation omitted) (noting "covenant duration of two years is generally held to be reasonable"). This element, thus, is satisfied here.

Finally, the agreement is not injurious to the public. As Plaintiffs note, the public will still be able to purchase ice cream. In fact, Plaintiffs seek this relief to permit it to find a new franchisee for Defendant's territory.

And, as noted, there are no facts suggesting any meritorious defense. For these reasons, Defendant is liable for breach of contract for continuing to operate in his former territory despite Plaintiffs having terminated his franchise agreement and Defendant being bound to a valid noncompete.

### C. Damages

Plaintiffs request default judgment in the amount of $43,275.[1] (Pla. Br., ECF No. 8-1 at 18). Plaintiffs maintain this number is the amount of lost future royalties. (Pla. Br., ECF No. 8-1 at 18). "The traditional remedy for breach of contract is expectation damages." *Goldfarb v. Solimine*, 245 A.3d 570, 577 (N.J. 2021). To be sure, "[t]he purpose of such compensating damages 'is to put the injured party in as good a position as if performance had been rendered.'" *Id.* (citing *Totaro, Duffy, Cannova & Co., L.L.C. v. Lane, Middleton & Co., L.L.C.*, 921 A.2d 1100, 1108 (N.J. 2007)).

Plaintiffs contend that Defendant entered into three franchise agreements that had: "(1) two ice cream seasons remaining with a minimum royalty of $3,500 per season; (2) three ice cream seasons remaining with a minimum royalty of $3,500 per person; and (3) seven ice cream seasons remaining with a minimum royalty of $3,675 per season." (Pla. Br., ECF No. 8-1 at 18).

As Plaintiffs note, Section 19.2 of the parties' franchise agreement states that upon termination, regardless of the reason, Defendant must pay Plaintiffs "all unpaid fees." (Compl., ECF No. 1, Ex. A at 16). Here, Defendant's actions deprived Plaintiffs of the agreements' contemplated future royalties. To put Plaintiffs in the position they would have been in had Defendant not violated the agreements, Plaintiffs are entitled to recover such monies. Therefore, judgment shall be entered against Defendant in the amount of $43,225.

---

[1] There appears to be a clerical error as the calculation is $43,225.

## IV. ENTRY OF PERMANENT INJUNCTION

Plaintiffs also seek a permanent injunction. (Pl. Br., ECF No. 8-1 at 7). As discussed above, Plaintiffs have shown actual success on the merits. The first element, thus, has been satisfied.

Plaintiffs have also shown that they will be irreparably harmed by Defendant's conduct absent injunctive relief. "Grounds for irreparable injury include loss of control of reputation, loss of trade, and loss of goodwill." *S & R Corp.*, 968 F.2d at 378 (citation omitted). Additionally, courts have held that trademark infringement amounts to irreparable injury as a matter of law. *Id.* (citation omitted). As Plaintiffs are likely to succeed on its trademark infringement claim, they are also able to show irreparable harm. Yet, even putting aside the trademark infringement claim, "[i]rreparable injury can also be based on the possibility of confusion." *Id.* (citation omitted). And as Plaintiffs note, Defendant's unauthorized use of the Mister Softee trademark is certainly likely to cause confusion among the public. Additionally, Plaintiffs are also harmed by its inability to control the quality of the products sold by Defendant under Plaintiffs' trademark. As such, the second element for a permanent injunction is met.

Third, the injunction will not result in greater harm to Defendant. Indeed, the harm stemming from Defendant's continued use of Plaintiffs' trademark without Plaintiffs' permission far outweighs any harm from a permanent injunction. As discussed, despite using the Mister Softee trademark, Plaintiffs have no control over the quality of the goods Defendant sells under its name and as such they risk the potential of loss of reputation and goodwill. Additionally, Defendant is competing against other authorized franchisees in not only his former territory but other territories.

For similar reasons, the entry of an injunction would be in the public interest. "In a trademark case, the public interest is 'most often a synonym for the right of the public not to be deceived or confused.'" *Id.* (citing *Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187, 197 (3d Cir. 1990)). An infringer's use of a trademark damages the public interest when his concurrent use of the trademark has the potential to cause confusion among the public. *Id.* That is certainly the case here. As such, injunctive relief would be in the public's interest.

Plaintiffs have satisfied all four elements for the entry of a permanent injunction.

## V. ATTORNEY'S FEES

Plaintiffs also seek attorney's fees based on the parties' agreement that it could recover reasonable attorney's fees and under 15 U.S.C. § 1117(a) because the infringement was knowing and willful. (Pl. Br., ECF No. 8-1 at 19). Based upon the allegations in the Complaint, the Court finds that the infringement was indeed knowing and willful. However, the Court cannot award attorney's fees for a specific amount because Plaintiffs' counsel has not provided a certification outlining the fees incurred. Upon filing of such a certification, the Court will review it and, if appropriate, enter an Order awarding attorney's fees.

## VI.     CONCLUSION

Therefore, for the reasons expressed above, it is ordered that Plaintiffs' Motion for Default Judgment and a Permanent Injunction is **GRANTED**. (ECF No. 8). Plaintiffs' Motion for Attorney's Fees is **GRANTED** in part and **DENIED** in part. Plaintiffs shall submit a certification in support of the amount of its request for attorney's fees within fourteen (14) days of this Order.

**SO ORDERED**.

 /s/ Christine P. O'Hearn
**CHRISTINE P. O'HEARN**
**UNITED STATES DISTRICT JUDGE**